UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT BOSCH HEALTHCARE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CARDIOCOM, LLC, <br><br> Defendant. | Case No.: 5:12-CV-3864-EJD <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO STAY PENDING REEXAMINATION** |

Presently before the court is Defendant's Motion to Stay Pending Reexamination of the six patents-in-suit. For the reasons set forth below, the motion is GRANTED and the case is STAYED.

## I.   BACKGROUND

The facts of this case are known to the parties and are only recited to the extent they are applicable to the instant motion. On July 24, 2012 Plaintiff Robert Bosch Healthcare Systems, Inc. ("Plaintiff") filed this suit against Defendant Cardiocom, LLC for infringement of six of its U.S. Patents: U.S. Patent Nos. 6,368,273 ("the '273 patent"); 6,968,375 ("the '375 patent"); 7,252,636 ("the '636 patent"); 7,941,327 ("the '327 patent"); 8,015,025 ("the '025 patent"); and 8,140,663 ("the '663 patent"). Two of the patents in suit, the '273 and the '375 patents, were previously raised with Defendant via a September 13, 2006 letter sent from Health Hero Network, Inc. ("Health Hero"), Plaintiff's predecessor-in-interest. Defendant responded on January 24, 2007, denying infringement and declining to take a license from Plaintiff. No further communications transpired between the parties until the filing of this action. The remaining four patents-in-suit issued after this exchange; however, each of these patents share overlapping specifications and are related to the '273 and '375 patents.

1

Case No.: 5:12-CV-3864-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STAY PENDING REEXAMINATION

Less than two months after Plaintiff brought this action, Defendant filed petitions to reexamine each of the patents-in-suit. Defendant filed an ex parte reexamination request of the '273 patent, and inter partes reexamination requests of the '025, '663, '327, '636, and '375 patents. The last of these applications was filed on September 13, 2012. Defendant seeks a stay of this action pending the final exhaustion of these six reexaminations.

## II.     LEGAL STANDARDS

"Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art" consisting of patents or printed publications. 35 U.S.C. § 302 (amended 2011). "Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO." Canady v. Erbe Elektromedizin GmBH and Erbe U.S.A., 271 F.Supp.2d 64, 78 (D.D.C. 2002). "The stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." Patlex Corp. v. Mossinghoff, 758 F.2d 594, 606 (1985), aff'd on reh 'g, 771 F.2d 480 (Fed. Cir. 1985).

A stay is within the discretion of the court. See Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."). A court may grant a motion to stay "in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive reexamination." MercExchange, L.L.C. v. eBay, Inc., 500 F.Supp.2d 556, 563 (E.D. Va. 2007). In this district, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings," (ASCII Corp. v. STD Entm't USA, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994)), though some courts have begun to rethink that policy in recent years (see, e.g., Network Appliance Inc. v. Sun Microsystems Inc., No. 07-CV-06053, 2008 WL 2168917 at *3 (N.D. Cal. May 23, 2008)).

Courts consider three main factors in determining whether to stay a case pending reexamination: "(1) whether discovery is complete and whether a trial date has been set; (2)

whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." Telemac Corp. v. Teledigital, Inc., 450 F.Supp.2d 1107, 1111 (N.D. Cal. 2006) (citation omitted).

### III. DISCUSSION

#### a. STAGE OF PROCEEDINGS

The early stage of a litigation weighs in favor of a stay pending reexamination. See Target Therapeutics, Inc. v. SciMed Life Sys. Inc., 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995).  Plaintiff does not appear to genuinely dispute that this litigation is in a very early stage.  Plaintiff filed this case less than four months ago and Defendant answered less than three months ago.  The parties have not engaged in any discovery nor exchanged initial disclosures.  This court has not issued a scheduling order, and has not set a claims construction hearing or a trial date.  Accordingly, the first factor weighs heavily in favor of a stay.

#### b. SIMPLIFICATION OF ISSUES

"[W]aiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims." Target Therapeutics, 33 U.S.P.Q.2d at 2023.  Here, each of the claims asserted by Plaintiff in this litigation is subject to reexamination. The majority of these claims are subject to inter partes reexamination.  Statistically these claims have a greater chance of being canceled or amended than they do of being confirmed.  See Pragmatus AV, LLC v. Facebook, Inc., No. 11–CV–02168–EJD, 2011 WL 4802958 at *3, (N.D. Cal. Oct.11, 2011) ("44% of all reexamination proceedings between 1999 and June 30, 2011 resulted in all claims being canceled, 43% changed the claims, and only 13% confirmed all claims.").  The claims subject to the ex parte reexamination do not stand a much greater chance of surviving completely unchanged.   The PTO's data shows that 22% of ex parte reexaminations result in all claims being confirmed, 11% result in all claims being cancelled, and 67% result in amended claims.  U.S.P.T.O., "Ex Parte Reexamination Filing Data – June 30, 2012", Dkt. No. 21, Ex. H at 2.  Given the likelihood that the scope of Plaintiff's claims will be altered or even cancelled, the court finds that the issues in this case stand to be clarified by a stay.

Plaintiff argues that because it is statistically unlikely that the reexaminations will finally resolve all the issues in this litigation, a stay will not aid the court in simplifying the issues in this case. The court disagrees. When a reexamination stands to simplify some, if not all, of the issues in a case, the second factor may still properly weigh in favor of a stay. See, e.g. Convergence Tech. (USA), LLC v. Microloops Corp., No. 10-CV-02051, 2012 WL 1232187 at *3-4 (N.D. Cal. Apr. 12, 2012); but cf Athena Feminine Tech. Inc. v. Wilkes, No. 10-CV-04868, 2012 WL 1424988, at *3 (N.D. Cal. Apr. 24, 2012) (denying a stay because, inter alia, the outcome of the reexamination process did not stand to resolve all of the legal claims in the case, including non-patent related claims such as misappropriation of trade secrets, breach of contract, and unfair competition). Here, it seems more likely than not that at least some of the claims may be at least amended during reexamination. In that case, the court would greatly benefit from the PTO's guidance as to the scope of the claims. Even if every claim survives reexamination unchanged, this case will still be simplified because Defendant will be estopped from asserting any invalidity arguments it could have raised in its five inter partes reexaminations. 35 U.S.C. § 315(c). The court thus finds that this second factor weighs in favor of a stay.

### c. UNDUE PREJUDICE OR CLEAR TACTICAL DISADVANTAGE

The third, and in this case the most critical, factor of the stay analysis focuses on the undue prejudice or tactical disadvantage the non-moving party stands to suffer should a stay issue. See In re Cygnus Telecomm. Tech., LLC Patent Litig., 385 F.Supp.2d 1022, 1023 (N.D. Cal. 2005). Plaintiff argues that it will suffer an unfair disadvantage because it is a direct competitor with Defendant in the telehealth market and particularly in a time-limited market created by the U.S. Department of Veterans Affairs, because its patents will likely expire before reexamination and any subsequent trial proceedings conclude, and because Defendant compounded Plaintiff's disadvantage by delaying its request for reexamination and selecting a longer reexamination process. The court will address each of these arguments in turn.

Plaintiff first asserts that, by virtue of the parties' positions as direct competitors, money damages cannot sufficiently compensate for any harm caused by a stay. "Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause

harm in the marketplace that is not compensable by readily calculable money damages." Avago Tech. Fiber IP (Singapore) Pte. Ltd. V. IPTronics, Inc., No. 10-CV-02863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) (citing Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327-28 (Fed. Cir. 2008)). As competitors in a relatively new market, Plaintiff argues, the parties are "struggling to establish themselves in the market place and to secure their section of the market." Pl. Opp. at *6, Dkt. No. 23. Once market share is established it is unlikely to significantly shift soon thereafter because customers, mainly healthcare providers, will be reluctant to undertake the time and expense required to convert systems. Time is thus of the essence to establish contracts and relationships. Plaintiff specifically points to the fact that both itself and Defendant are currently competing for $225 million worth of contracts over the next five years with the Department of Veterans Affairs. Because Defendant's product uses Plaintiff's technology as covered by the patents-in-suit, Plaintiff argues, money damages will not adequately compensate for Defendant's unfair competition in this nascent, and in the case of the Department of Veterans Affairs, time-limited, market.

While it is true that competition based on alleged infringement can weigh against a stay, it is not a compelling argument in this case. Here, Plaintiff licenses the patents-in-suit to several other competitors, and has offered a license to Defendant. Through its licensing efforts, Plaintiff has enabled other companies to directly compete in its own market, thus creating competition for relationships, opportunities, and market share. Given that Plaintiff has not used the patents-in-suit to keep competitors out of the market, it cannot now argue that it will suffer an unfair disadvantage by Defendant's ongoing competition during any stay period. Should infringement ultimately be found in this case, money damages will adequately compensate Plaintiff for any lost licensing revenues.

Next, Plaintiff argues that it will be unfairly disadvantaged by a stay because the patents-in-suit will likely expire before the reexamination proceedings and any subsequent trial has reached completion. As this court has previously stated, the delay inherent to the reexamination process does not generally, by itself, constitute undue prejudice. Telemac Corp. v. Teledigital, Inc., 450 F.Supp.2d 1107, 1111 (N.D. Cal. 2006). As evidenced by Health Hero's September 13, 2006

letter, Plaintiff and its predecessor were aware of Defendant's possible infringement for at least six years before filing suit. Plaintiff's own strategic decision to bring this action now, less than three years before its patents-in-suit begin to expire, does not create the undue prejudice necessary to shield it from the potential negative consequences of Defendant's strategic response.

Finally, Plaintiff argues that Defendant's initial delay in seeking reexamination, followed by its rush to file reexamination requests before the new and quicker America Invents Act reexamination procedures became effective on September 16, 2012, compounded Plaintiff's tactical disadvantage. Pointing to the 2006 Health Hero letter and its various other lawsuits against competitors, Plaintiff suggests that its own pre-litigation conduct put Defendant on notice of the patents-in-suit, and created a duty for Defendant to seek reexamination. This argument is both unfounded and unconvincing. Defendant cannot be faulted for failing to seek reexamination before it was served with Plaintiff's summons and complaint. Defendant declined to take a license from Health Hero via a January 2007 letter and thereafter heard nothing of the matter until Plaintiff filed this action in July 2012. This brief exchange six years ago created no duty for Defendant to undertake the time and expense of requesting reexamination. Additionally, even if Defendant was aware of Plaintiff's active infringement litigation against other parties, such notice created no duty for Defendant, a third party, to seek reexamination. Once sued, Defendant acted promptly by filing six reexamination requests within two months. In filing its lawsuit less than two months before the implementation of a major overhaul to the inter partes reexamination proceedings, Plaintiff certainly should have been aware that Defendant would face the choice of submitting any reexamination requests under the old or the new regimes. Plaintiff cannot be prejudiced by a litigation decision it itself afforded its opponent. Therefore, that Defendant submitted its requests just days before new reexamination procedures were to be instituted did not constitute an undue prejudice towards Plaintiff.

Plaintiff's arguments that it will be tactically disadvantaged by a stay, while numerous, are not compelling. In each instance, Plaintiff has essentially constructed the environment that created any disadvantage it stands to suffer. Therefore, the court finds that the undue prejudice factor weighs in favor of a stay.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for a stay of this case. This action is STAYED in its entirety pending final exhaustion of the patent reexamination proceedings, including any appeals.[1]

The Clerk shall ADMINISTRATIVELY CLOSE this matter.

The parties shall submit a joint status report apprising the court of the status of the reexamination proceedings on June 3, 2013, and every six months thereafter.

The parties shall provide notice to the court within one week of final exhaustion of all patent reexamination proceedings, including appeals. In their notice, parties shall request that this matter be reopened, and that a case management conference be scheduled.

IT IS SO ORDERED.

Dated: December 3, 2012

_____
EDWARD J. DAVILA
United States District Judge

---

[1] This order does not preclude any party from moving to reopen this action.